**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Deana Rose Discordia</u>

     v.                             Case No. 19-cv-1261-PB
                                             Opinion No. 2021 DNH 028
<u>Andrew Saul, Commissioner</u>
<u>Social Security Administration</u>

**<u>MEMORANDUM AND ORDER</u>**

Deana Rose Discordia challenges the denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g).  She contends that the Administrative Law Judge ("ALJ") committed reversible errors by failing to consider the diagnoses and opinions of her treating and examining physicians, failing to give appropriate weight to her own testimony, and failing to review the entire medical record.  The Commissioner, in turn, moves for an order affirming the ALJ's decision.  For the following reasons, I deny Discordia's motion and affirm the Commissioner's decision.

I.    BACKGROUND[1]

A.   Procedural Facts

Discordia is a 51-year-old woman who completed high school and two years of college.  She worked as a correctional treatment officer and correction counselor until April 2010, when she retired early to have several medical surgeries.  In September 2017, she applied for disability insurance benefits, alleging that her disability began April 2014, due to Ehlers-Danlos Syndrome Type III (hypermobility) and degenerative disc disease.  Discordia's insured status expired on March 31, 2016.

Discordia's application for disability insurance benefits was denied in December 2017.  In September 2018, she testified at a hearing before ALJ Thomas Merrill, who ultimately denied her claim.  The Appeals Council granted her request for review and subsequently found that Discordia was not disabled.  See Tr. 5.  Discordia now appeals.

B.   Medical Evidence

Discordia saw Dr. Michael Joyce, an orthopedic sports specialist, for bilateral shoulder arthroscopic plication and rotator cuff debridement for the left shoulder in September 2010 and for the right shoulder in March 2010.  Dr. Joyce cleared her

---

[1] I recount here only those facts relevant to the instant appeal. The parties' more complete recitations in their Statements of Material Facts (Doc. No. 6-2 & 8) are incorporated by reference.

to lift any weight at waist level and up to 40 pounds overhead, with the ability to increase weight as her pain allowed.

In June 2013, Discordia visited Dr. Patrick Doherty, a neurosurgeon, reporting intermittent coccygeal and sacral pain. An MRI at that time showed mild degenerative changes at L4-5, L5-S1, and a 1.1 cm Tarlov cyst behind S2.  In 2013, she was treated with injections and physical therapy.  During her treatment period, her gait, strength, range of motion, and sensation were all reported as normal.  In October 2013, Discordia once again saw Dr. Doherty and complained of increased pain, although Dr. Doherty noted no medical signs of change and continued to recommend injections and physical therapy for her treatment.

Discordia visited Dr. Peter Whang, an orthopedist, in March 2014.  Dr. Whang noted that her gait was normal, and found no restriction in cervical flexion, extension, rotation, or lateral bending, no tenderness over the posterior cervical spine or trapezius muscles, no need for an assistive device for ambulation, mild pain in the back with extension, normal alignment and muscle tone, negative straight leg raising tests, and strength at 5/5 throughout.  Dr. Whang also examined the 2014 MRI, noting that it showed mild disc degeneration at L4-5 and mild-to-moderate degeneration at L5-S1, in addition to annular tears, worse at L4-5, and perineural cysts without

significant erosion of the sacrum.  Dr. Whang cleared her for all activities, including exercise as tolerated, and recommended continued physical therapy.

Discordia also visited Dr. Robert Levin, a rheumatologist, in March 2014 for an initial exam.  During the exam, he found that Discordia had a Beighton Hypermobility Score of 4/9 for her elbows, knees, thumbs to forearms, and ability to bring her hands flat on the floor bending forward.  Discordia complained of discomfort over the coccyx and sacrum.  Dr. Levin diagnosed her with Ehlers-Danlos Syndrome Type III (hypermobility) and told her that much of her discomfort was likely related to hypermobility.  He also told her that she had arthralgias in multiple sites.  He recommended physical therapy to help tone and bulk her muscles and recommended gaining five pounds.  By August 2014, Discordia reported she was more active.  In August 2015, Dr. Levin noted during a visit that Discordia was receiving physical therapy for instability of the sacroiliac joint, and that holistic physical therapy was helping her symptoms.

In April 2014, Discordia once again visited Dr. Joyce.  Dr. Joyce noted that she walked without a limp and without an assistive device, her strength was full, her active and passive range of motion were normal, her hip was stable with no evidence of joint laxity, and she had no peripheral neuropathy.  Imaging

of the pelvis was normal, and he found no hip osteoarthritis.
He noted a limited range of motion in her right hip and ordered
an MRI arthrogram.  The MRI of her right hip did not indicate
interarticular or other abnormality.  He subsequently diagnosed
hip trochanter bursitis.  In a May 2014 visit, Dr. Joyce again
noted no limp or use of an assistive device for walking.  He
also found no muscle wasting or atrophy, no pain on palpation of
the SI joint, strength was full at 5/5, and the hip was stable,
with no evidence of joint laxity, and no evidence of lumbar
radiculopathy.  Discordia reported pain of 3/10 before injection
and 2/10 after injection.  Dr. Joyce diagnosed her with
musculoskeletal pain of the hip joint and recommended treatment
of therapeutic exercise, stretching, and activity modifications,
however he noted that she could do activities as tolerated
without restriction.

In May 2014, Discordia visited Dr. Khalid Abbed for right-
sided low back pain, radiating to her posterior lateral thigh
down the calf and into the great toe, with pain at 6/10.  Dr.
Abbed prescribed lorazepam, aciphex, Zofran, and tramadol.  Dr.
Abbed noted that her gait was normal, she used no assistive
device, 5/5 strength, and normal sensation throughout.  He
reviewed an MRI showing degenerative changes at L4-5 and L5-S1,
with annular tears and disc bulging.  He recommended taking the

prescribed medications in addition to gabapentin and beginning a formal physical therapy program.

Discordia began physical therapy with Tiffany Rindell, PT, for three sessions beginning in December 2014.  Rindell noted that Discordia had excellent core strength and that she had resumed most of her functional and recreational exercises without exacerbating her pain.

In July 2015, Discordia visited Rachel Hamilton, DO.  She also met with Suzanne Anderson, NP, in August 2015.  Nurse Anderson reported in October 2015 that Discordia's gait was normal.  Discordia also received four chiropractic treatments between January and March 2016 at Taylor Chiropractic.

Discordia also reported symptoms that were not present in the medical record during the relevant claim period between April 2014 and March 2016.  In April 2016, Discordia had an exam with Dr. Hamilton, where she reported sciatic pain.  During an exam with Dr. You Sung Sung that same month, she reported GERD symptoms.  In December 2016, she reported headaches with nausea every two to three days.  During an April 2017 exam with Dr. Levin, Discordia reported nausea and digestive problems.

In a December 2017 opinion, state Disability Determination Services (DDS) physician Dr. Green stated that Discordia was capable of performing light work, except that she could frequently climb ramps/stairs and ladders/ropes/scaffolds,

6

stoop, and kneel, and could occasionally crouch and crawl.  Dr. Green noted that between the onset date, March 2013, and the date last insured, March 2016, the medical record demonstrated that Discordia could walk distances and hike, and she was described as athletic and an outdoorswoman.

## C.   **The ALJ's Decision**

The ALJ assessed Discordia's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520.  At step one, he found that Discordia had not engaged in substantial gainful activity since April 1, 2014, her alleged disability onset date.  Tr. 265.  At step two, the ALJ found that her Ehlers-Danlos Syndrome Type III (hypermobility) and degenerative disc disease of the lumbar and cervical spine were both severe impairments.  Tr. 265.  The ALJ also found that her Tarlov cysts and various other medical conditions were not severe impairments.  Tr. 266.  At step three, the ALJ determined that none of Discordia's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 266-67; see 20 C.F.R. § 404.1520(d).  The ALJ then found at step four that Discordia had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could frequently climb ramps, stairs, ropes, ladders and scaffolds, stoop and kneel, and could occasionally crouch and crawl.  Tr.

267.  The ALJ also found that she had unlimited use of her hands
and feet to push and pull and that her balance was unlimited.
Tr. 267.

In terms of medical opinion evidence, the ALJ found Dr.
Green's opinion "most persuasive," finding it consistent with,
and well supported by, the medical evidence.  Tr. 272.  The ALJ
found the opinions of Gwenn Rosenberg, ND, and Rachel Hamilton,
DO, "unpersuasive."  Tr. 272.  Relying on the testimony of a
vocational expert, the ALJ then found at step four that
Discordia could perform her past relevant work as a correctional
counselor and that this work did not require the performance of
work-related activities precluded by her residual functional
capacity.  Tr. 273.  Accordingly, the ALJ concluded that
Discordia had not been disabled from the alleged disability
onset date through the date last insured.  Tr. 273.

After granting Discordia's request for review, the Appeals
Council adopted the ALJ's RFC assessment and his findings at
steps one through three but found that the ALJ's step four
finding that Discordia could perform her past relevant work was
not supported by substantial evidence.  The Appeals Council,
however, found her not disabled at step five of the sequential
analysis, concluding that the vocational expert's testimony
supported a finding that there were jobs in the national economy
that Discordia could perform despite her limitations, including

laundry folder, package sorter, and price marker.  Accordingly, the Appeals Council concluded that she was not entitled to disability insurance benefits through the date last insured.

## II.  **STANDARD OF REVIEW**

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion."  Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging

9

matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

### III.   ANALYSIS

Discordia alleges that any one of three errors in the ALJ's decision warrants remand.  First, she contends that the ALJ failed to consider the diagnoses and opinions of her treating and examining physicians.  Second, she argues that the ALJ failed to give appropriate weight to her testimony, including complaints of pain and other symptoms.  Finally, Discordia argues that the ALJ failed to review the entire medical record. I address each argument in turn and conclude that none has merit.

**A.   Diagnoses and Opinions of Treating and Examining Physicians**

Discordia argues that the ALJ erroneously failed to consider the diagnoses and opinions of all her treating and examining physicians.  Discordia does not specify at which step of the sequential analysis this purported error took place, however, to the extent she alleges that the ALJ should not have

found that Discordia retained the residual functional capacity
to perform light work, she has not met her burden of
demonstrating that reversal is warranted on this basis.

A residual functional capacity assessment will be affirmed
if it is supported by substantial evidence. Irlanda Ortiz, 955
F.2d at 769, quoting 42 U.S.C. § 405(g). Here, the ALJ found
the opinion of Dr. Green "most persuasive," not only because he
had reviewed the evidence from the relevant period, but also
because his opinion was consistent with the objective medical
record. See 20 C.F.R. § 404.1520c (c)(2) ("The more consistent
a . . . prior administrative medical finding[] is with the
evidence from other medical sources and nonmedical sources in
the claim, the more persuasive the . . . prior administrative
medical finding[] will be."). However, in contrast to
Discordia's argument that the ALJ's opinion relied "wholly" on
Dr. Green's opinion, Dr. Green's opinion was far from the only
piece of evidence the ALJ relied on. See Quintana v. Comm'r of
Soc. Sec., No. 04-1341, 2004 WL 2260103, at *1 (1st Cir. Oct. 7
2004) ("This is . . . not a case in which the nonexamining
consultants' reports were the only evidence of the claimant's
residual functional capacity."). In his opinion, the ALJ spent
considerable time reviewing the observations and notes of
Discordia's treating physicians, which "indicate[d] largely
normal physical examination findings." Tr. 269. The ALJ also

reviewed the objective medical record, including X-Rays of Discordia's hips and pelvis, and an MRI arthrogram of her right hip, which were normal.  An MRI of Discordia's lumbar spine showed annular tears, but they were only "mild" and showed only "mild-to-moderate" disc degeneration.

The ALJ found two opinions from two providers "unpersuasive," however, even though these providers had physically examined Discordia.  The ALJ found Dr. Rosenberg's opinion unpersuasive in part because her treatment notes primarily consisted of emails between Dr. Rosenberg and Discordia, which "do not include significant information that is relevant to evaluating [Discordia's] work-related functional limitations."  Tr. 272.  Further, many aspects of Dr. Rosenberg's conclusory opinion – for example, that Discordia was unable to sit, walk, or stand for "any length of time" – are directly contradicted by the objective medical evidence.  Tr. 272.  The ALJ likewise found Dr. Hamilton's opinion unpersuasive because she discussed Discordia's condition in 2010, six years before she first began treating Discordia.  Before her treatment, Dr. Hamilton had "no objective basis" to opine about Discordia's condition, particularly her Ehlers-Danlos syndrome which was not diagnosed until 2014.  Further, most of Dr. Hamilton's notes are from after the relevant period, ending in March 2016.

In conclusion, the ALJ's opinion relied on Dr. Green's opinion to the extent that it was consistent with the objective medical record and notes from each of Discordia's treating physicians, the vast majority of which were consistent with the ALJ's determination that Discordia retained the residual functional capacity to perform light work.

**B.   Evaluation of Subjective Complaints**

Discordia argues that the ALJ's RFC determination cannot stand because the ALJ did not properly evaluate her complaints of pain and other symptoms.  I find that the ALJ supportably discounted her subjective reports regarding the intensity, persistence, and limiting effects of pain and other symptoms as not entirely consistent with the medical evidence and other evidence in the record.

In crafting a claimant's RFC, an ALJ must consider all of a claimant's alleged symptoms and determine the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence and other record evidence.  20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  This involves a two-step inquiry.  First, the ALJ must determine whether the claimant has a "medically determinable impairment" that could reasonably be expected to produce his alleged symptoms.  SSR 16-3p, 2016 WL 1119029, at *3.  Second, the ALJ evaluates the "intensity, persistence, and limiting

effects of [those] symptoms" to determine how they limit the
claimant's ability to perform work-related activities.  Id. at
*4.  The ALJ must "examine the entire case record" in conducting
this evaluation, including objective medical evidence, the
claimant's own statements and subjective complaints, and any
other relevant statements or information in the record.  Id.;
see Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018).

The ALJ cannot disregard the claimant's statements about
her symptoms solely because they are unsubstantiated by
objective medical evidence.  See SSR 16-3p, 2016 WL 1119029, at
*5.  Rather, an inconsistency between subjective complaints and
objective medical evidence is just "one of the many factors" to
consider in weighing the claimant's statements.  Id.

Other factors the ALJ must consider, known as the "Avery
factors" in the First Circuit, include (1) the claimant's daily
activities; (2) the location, duration, frequency, and intensity
of the pain or symptom; (3) any precipitating and aggravating
factors; (4) the effectiveness of any medication currently or
previously taken; (5) the effectiveness of non-medicinal
treatment; (6) any other self-directed measures used to relieve
pain; and (7) any other factors concerning functional
limitations or restrictions.  Avery v. Sec'y of Health & Human
Servs., 797 F.2d 19, 29 (1st Cir. 1986); see 20 C.F.R.
§ 404.1529(c)(3).  But the ALJ is not required to address every

14

Avery factor in his written decision for his evaluation to be supported by substantial evidence. Deoliveira v. Berryhill, 2019 DNH 001, 2019 WL 92684, at *5 (D.N.H. Jan. 2, 2019). Instead, the decision need only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

Here, the ALJ fully considered Discordia's testimony as to her pain and her functional abilities. However, the ALJ found that "the objective medical evidence of record does not fully support [her] allegations." Tr. 269. At the hearing, Discordia testified that "she can safely lift and carry up to 3 pounds . . .[,] walk for up to 25 minutes at a time, and . . . sit and stand up to 20 minutes at a time . . . ." Tr. 268. She also testified that she "has to frequently lie [down] during the day due to pain because she has subluxations or dislocations of her sacrum, neck, shoulders and ribs," in addition to frequent migraines and bowel problems. Tr. 268. However, the ALJ found this testimony inconsistent with Discordia's own self-reported activities, which included taking 25-minute walks ten times a month, performing light housework or preparing "simple meals" for up to twenty minutes at a time. Tr. 268. She testified to

packing, lifting, carrying boxes, and driving during a move in
June 2014, moving heavy boxes for a yard sale in August 2014,
and swimming in Echo Lake in August 2015.  Tr. 268; see, e.g.,
Dore v. Saul, 2019 DNH 154, 2019 WL 4463462, at *5 (D.N.H. Sept.
17, 2019) ("[T]he ALJ gave sufficiently specific reasons for
discounting [plaintiff]'s subjective complaints.").

        In his opinion, the ALJ also cited the inconsistency
between Discordia's complaints and the objective medical
evidence.  The ALJ noted that, regarding her Ehlers-Danlos
Syndrome Type III (hypermobility) diagnosis, the physical
examination findings were "largely normal."  Tr. 269.  Treatment
records indicate that, in April 2014, she was performing heavy
workouts, her gait was normal, inspection and X-Rays of her hips
were normal, X-Rays of her pelvis was normal, and Discordia was
able to do activities as tolerated without restriction.  Tr.
269.  Similarly, the ALJ explained that her recommended
treatment courses were generally conservative, including
prescribed medication, physical therapy, and normal activities,
pain permitting.  Contrary to Discordia's argument, the ALJ did
not conflate her physical therapy activities with leisure
activities she participated in, including hiking, swimming, and
lifting heavy boxes.  Tr. 256, 268.  The ALJ was entitled to
consider those inconsistencies as a factor in evaluating
Discordia's subjective complaints.

In short, the ALJ offered specific reasons, supported by the record, for discounting Discordia's statements concerning the intensity, persistence, and limiting effects of her pain. The ALJ's evaluation is, therefore, entitled to deference.

**C.    Challenge to Supportability of RFC Finding**

Discordia also argues that the record, considered as a whole, does not support the ALJ's RFC finding and that the ALJ failed to consider the entire record when making his findings. Instead of finding fault with the evidence upon which the ALJ relied, she merely points to other evidence that she contends supports a more restrictive RFC.  To the extent she is asking me to reweigh the evidence, I cannot do so.  See Irlanda Ortiz, 955 F.2d at 769.  I can review only the sufficiency of the evidence, not its weight, and there was certainly evidence in the record that a reasonable person would accept as adequate to support the ALJ's finding here.  See id.

Notably, the ALJ relied most heavily on the opinion of Dr. Green, the independent medical expert who gave his opinion based on his review of the entire record.  Dr. Green stated in his opinion that "the record indicates the claimant was capable of walking distances and hiking, and she was described as athletic and an outdoorswoman."  Tr. 272.  The ALJ's RFC finding mirrors Dr. Green's opinion.  See Tr. 267.  The ALJ reasoned that Dr. Green's opinion was "most persuasive" "due to his program

17

knowledge, because he reviewed the evidence related to the relevant time period, and because he explained his opinion in detail, which is consistent with the objective medical record." Tr. 272.

Discordia does not challenge the ALJ's weighing of the opinion evidence generally or Dr. Green's opinion specifically. But even if she did, I conclude that the ALJ offered adequate reasons to account for the weight he assigned to Dr. Green's opinion.  See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); id. § 404.1527(c)(6) ("[T]he extent to which a medical source is familiar with the other information in [a claimant's] case record [is among] relevant factors that we will consider in deciding the weight to give to a medical opinion."). Accordingly, I conclude that the ALJ was entitled to rely upon Dr. Green's opinion in crafting the RFC.

It is true, as Discordia points out, that there is other evidence in the record supporting further restrictions to her RFC.  The ALJ did not ignore the evidence on which Discordia relies; instead, he considered that evidence and reasonably found that it was inconsistent with other substantial evidence in the record.  Because it is the ALJ's job to choose between

two conflicting views of the evidence, his RFC finding is entitled to deference.  See Purdy, 887 F.3d at 13.

### IV.   CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Commissioner's motion to affirm (Doc. No. 7) and deny Discordia's motion for an order reversing the Commissioner's decision (Doc. No. 6).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 1, 2021

cc:  Kevin M. Parrington
     Christopher G. Roundy